### John V. Farwell et al. v. Adam H. Johnston et al.

1. CHATTEL MORTGAGES—*Expenses in Keeping Property After De-
fault.*—The general rule is that a creditor holding security may charge
against the proceeds of such collateral, such expenses as are reasonably
necessary in keeping, caring for, protecting and realizing upon his
pledge.

2. SAME—*Expenses in Taking Possession of the Property—Replevin
—Receiver.*—Under the provisions of a chattel mortgage the mortgagee
could, out of the proceeds of the sale, retain all costs and charges for
taking, removing, keeping, storing, and advertising the property, and
having taken possession, the mortgagee entered into an agreement with
a receiver appointed in a suit for the dissolution of the mortgagor's firm,
to deliver to him the property for sale by him, reserving his debt and
expenses out of the proceeds. *It was held,* that the mortgagee lost
nothing by the agreement but was entitled to all expenses by him neces-
sarily incurred in taking possession of the property, including the costs
of a replevin suit in so doing.

Memorandum.—Appeal from the Circuit Court of Cook County;
the Hon. RICHARD S. TUTHILL, Judge, presiding.   Heard in this court
at the October term, 1894, and reversed in part with order.   Opinion
filed December 20, 1894.

#### STATEMENT OF THE CASE.

This is an appeal from an order entered by the Circuit
Court of Cook County, disallowing to these appellants dis-
bursements made by them in recovering, taking and defend-
ing possession of property upon which they held chattel
mortgages, and in which mortgages it was provided that
they should retain such expenditures from the proceeds of
the sale of the mortgaged property.

Madigan & Co., which was a copartnership composed of
Patrick Q. Madigan and Charles H. Magoon, being in-

debted to appellants, executed four chattel mortgages to
the appellants upon the firm property, to secure the payment
of their respective claims.   These mortgages contained the
usual insecurity clause, and also a provision that the mort-
gagees could sell the property, and out of the proceeds of
the sale thereof " retain all costs and charges for pursuing,
searching for, taking, removing, keeping, storing, advertis-
ing and selling " the property, together with the amount
due upon the notes described in the mortgages.

On February 8, 1874, the mortgagees, feeling themselves
insecure, attempted to take possession of the property, but
when their agent arrived at the place of business of the
mortgagors, he found one Homer B. Galpin in possession of
all the property covered by the mortgages, who claimed
that he held such possession under a deed of assignment
executed by Charles H. Magoon, one of the mortgagors.
Upon investigation these appellants found that, after the
execution of their mortgages, on the same day, Magoon had
made an assignment, in the name of Madigan & Co., of all
the firm property to one Homer B. Galpin.

Appellants, on the next day, February 9, 1894, began a
replevin suit in the Superior Court of Cook County against
Homer B. Galpin, and recovered possession of the property.
The assignee immediately applied to the County Court for,
and obtained a rule against the sheriff and his deputy to
show cause why they should not be attached for contempt
of court.   After a hearing, the County Court, on February
15, 1894, held the assignment to be void, and discharged the
rule against the sheriff and his deputy.

On February 19, 1894, Patrick Q. Madigan filed a bill in
the Circuit Court of Cook County against Charles H.
Magoon and others to dissolve the partnership.   The bill
prayed for the appointment of a receiver to wind up the
affairs of the firm.   The court granted an injunction, and
on February 20, 1894, appointed Charles F. Harding receiver
of the firm assets.

In the meantime these appellants remained in possession
of the property under their mortgages.   Shortly after his

appointment, the receiver had a conference with the attorneys for the mortgagees, and stated that he could sell the property at a better advantage to the estate if possession was delivered to him, and asked if the mortgagees would consent to the delivery of the property to him, subject to the lien of their mortgages. He was told that this arrangement would be agreeable to the mortgagees if their rights were fully protected; that the mortgagees claimed not only the payment of their respective debts, but all expenses, including $300 for attorney's fees in the replevin suit and the County Court proceedings.

With this understanding an order was entered on February 23, 1894, containing among other things the following:

"And it further appearing to the court that it is for the best interest of the estate that said property should be sold by the receiver herein, and that a better price will be realized therefrom than at a sale by said mortgagees, and said mortgagees having stated to the receiver that they will be willing to deliver possession of said property to him, subject to all their rights and claims against the same, provided said receiver shall pay to them the proceeds of the sale of said property as fast as received until their said debts, with all expenses attendant on the foreclosure of said mortgages, are paid in full.

It is therefore ordered by the court that the receiver be and is hereby authorized to make an agreement for that purpose with said mortgagees to receive possession of said property from them, subject to all of their liens against said property for the amount of their respective debts, costs, expenses, etc., to sell said property at retail or otherwise, as in his judgment may be best, and pay the proceeds of said sale to said mortgagees, respectively, until their respective debts, with all costs and disbursements made or incurred by them in and by the foreclosure of said mortgages, and obtaining and defending possession of said property, are paid in full; and until such payment is made, the liens of said mortgage, respectively, be preserved and transferred to the records of such property in the hands of the receiver,

Farwell v. Johnston.

and that he hold the balance of the proceeds of said property subject to the further order of the court herein."

The receiver entered into a contract with the mortgagees in conformity with the order, and took possession of the property, and paid to these appellants, under the terms of this order, several payments on account of their claims, and on April 25, 1894, these appellants filed a petition asking that the receiver be directed to pay to them the sum of $508.45—$208.45 of which was disbursed for court costs, custodian fees, stenographers' fees, etc., and $300 of which was for attorneys' fees incurred in the recovery of and defending possession of the mortgaged property.

Upon the hearing of the petition the court disregarded this order of February 23d, and the agreement made between the receiver and the mortgagees, allowed but the item of $208.45, and refused to allow to these appellants the amount paid out by them for attorney's fees in obtaining and defending possession of the mortgaged property.

TENNEY, McCONNELL & COFFEEN, attorneys for appellants.

APPELLEES' BRIEF, MORAN, KRAUS & MAYER, AND MAHER & GILBERT, ATTORNEYS.

The order of the court is not more comprehensive than the language of the chattel mortgages. Under such language, it has been held that attorney's fees can not be recovered. Hulse v. Mershon, 125 Ill. 52; 2 Cobby on Chat. Mtg., Par. 981.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Under the clause of the mortgages that the mortgagees could sell the property, and out of the proceeds of the sale retain all costs and charges for taking, removing, keeping, storing, advertising and selling the property, which right was recognized in the agreement and order under which they turned the property over to the receiver, the mortgagees were entitled to all expense by them necessarily incurred

in taking the property from the possession of the assignee, Galpin.

The general rule is that a creditor holding security may charge against the proceeds of such collateral, such expenses as are reasonably necessary in keeping, caring for, protecting and realizing upon his pledge. Furness v. Union National Bank, 46 Ill. App. 522 ; 147 Ill. 570; Jones on Pledges, Sec. 400.

So much of the order of the Circuit Court as directs the payment to appellants of $208.45 is affirmed; that portion of the order disallowing the claim of appellants for the further sum of $300 is set aside, and an order is here made that the receiver, out of the proceeds of the property mortgaged to appellants, pay them the sum of $300 for expenses by them incurred for attorneys' fees in asserting and defending their title to said property. Reversed in part with order.